Good morning, Your Honors. Good morning. Deborah Dyson, appearing for Sang Yoon Kim. Could you speak loudly into the microphone? All right. I'm sorry. I'm Deborah Dyson, appearing for petitioners Sang Yoon Kim, Sang Won Kim, and Sang Ho Kim. This case, as you're aware, stems from criminal investigation of a corrupt INS official, Leland Sestere, who was convicted of conspiring to grant lawful permanent residence to aliens who were not required to prove their eligibility through proper applications. When Sestere's crimes came to light, petitioners were placed into removal proceedings as aliens whose permanent residence status had been granted improperly through Sestere. There are two issues in the case, whether the government met its burden of proving petitioners' removability by clear and convincing evidence, and whether, if found removable, the petitioners qualify for waivers of inadmissibility under Section 212K of the Act. Now, with respect to removability, much of the evidence the government produced substantiated the Sestere conspiracy, and that was established really beyond doubt. But the government had the further task of linking these particular petitioners to that conspiracy, and it's here that petitioners contend that the government failed to carry its burden of proving their removability by clear and convincing evidence. Now, the government couldn't produce the aliens' files. The petitioners' files, in this case, and was therefore confined to circumstantial evidence to prove removability. Circumstantial evidence can be sufficient, but when there is circumstantial evidence, every link in the chain of inference should be sound. And here, in many cases, there were ambiguities that the government failed to resolve. We'll start with the anchor of the chain, the Sestere numbers, the list of numbers that Sestere compiled when he feared a criminal prosecution was coming his way. Now, it's a matter of record that he compiled that list very hastily and without cross-checking anything, and many numbers that appear on the list are not associated with any dates or names. And, in fact, one family's numbers appeared on that list by mistake because Sestere had scooped up a bunch of files and taken them home, and one of them was a legitimate case. This came to light only because the aliens in question were named Zamora, so their name stood out on a list of Korean names. And that really marks the list as wholly suspect because any given Korean name would not stand out as being mistakenly on the list. So the linchpin, the really the one piece of evidence that really links Petitioners to this conspiracy is quite suspect. Furthermore, although there were some ambiguities in the record concerning the immigration consultant that the formerly lead principal alien was dealing with, her identity was never firmly established, nor was she firmly linked to Sestere. There were some difficulties about her name, which appeared various ways in the record, and there was never any effort to establish whether this particular person that these Petitioners dealt with actually never did legitimate immigration work. Even if she did work with Sestere, even if this was one of his co-conspirators, was it the case that this woman never filed any legitimate adjustment applications? That was never established. Furthermore, although Agent Brown, who was investigating for the anti-fraud unit, did personally interview the formerly the lead Petitioner, these Petitioners' mother, and she was able to establish that their visa was granted in an inappropriate category. However, that happens, and there are more than one inference that can be drawn from that. So in sum, we feel that no reasonable adjudicator could feel that the record compels the conclusion that these Petitioners' movability was established by clear and convincing evidence. Now, as to the 212K waiver, the government argues that because the language of the waiver says that any alien inadmissible from the United States under paragraph 5A or 7A1 of subsection A who is in possession of an immigrant visa may, if otherwise admissible, be admitted in discretion of attorney general if the attorney general is satisfied that inadmissibility was not known to and could not have been ascertained by the exercise of reasonable diligence by the immigrant before the time of departure of the vessel or aircraft from the last port outside the U.S. and so on. The government claims that because this waiver provision says in possession of an immigrant visa, it can't apply to these Petitioners because they were not literally in possession of an immigrant visa. However, our position on that does not apply. The procedures differ because there's a consular process, but a green card is a way of immigrating and an immigrant visa is a way of immigrating. They are procedurally distinct because one happens in embassies and consular posts outside the U.S. and the other happens within the U.S. But the end result is the same. A green card and an immigrant visa are immigration documents. I guess one question I have is the statute says what it says. The statute, yes, that's true. The statute says what it says. And yet in context, you know, we might give a broader interpretation because this waiver provision is explicitly linked by a second clause of the inadmissibility provision under which these Petitioners were charged, explicitly linked that inadmissibility provision to this waiver, for one thing. It actually says clause 2 of, let's see, 212a7a, says that a waiver provision is located at 212k. So there is an explicit link, and we believe that the statute should be read, the waiver provision should be read in that context to begin with. And furthermore, the charging documents under which the charging documents against these Petitioners make it very clear that the I-551s or resident alien cards were analogous to immigrant visas as entry documents. All the factual allegations in the notices to appear, those are the charging documents, those all focus on Petitioners' last entry, and inadmissibility is predicated in the charging documents on their inability to produce valid entry documents at that time. So under the charging documents, the government has placed these Petitioners in an analogous position to immigrants presenting themselves for admission in the first instance. And that's where the equal protection argument really comes in. These Petitioners are similarly situated to immigrants presenting themselves as it were at the border for the first time, because if they hadn't, I mean, the government says, the government acknowledges or states in its brief that these Petitioners were not lawful permanent residents and so could be distinguished from people presenting themselves with immigrant visas. And actually, we would concede that point. These Petitioners weren't afforded the protection that's ordinarily afforded to lawful permanent residents. If they had been, they couldn't have been charged under the inadmissibility provision under which they were in fact charged. They would have had to be charged. There's a statute that governs when lawful permanent residents may be treated as inadmissible, and that statute is 11A13C. And if these Petitioners had actually been treated by the charging documents as lawful permanent residents, they couldn't have been charged under 7A, under 212A7A. So that's the gist of the equal protection argument. These Petitions were placed by the government in the charging documents in a similar situation to immigrants presenting themselves for the first time. And that's why we believe that equal protection does apply here and it would be an equal protection violation to deny these Petitioners entrance based on. And then if you are persuaded by the equal protection argument, then the question becomes, if Sosteri had been operating out of a consular post in Seoul, could these Petitioners have been charged under 7A? And that's where the 212 case law would begin to kick in, because all the 212 case law turns on the question of knowledge. And if these Petitioners were found not to know or by reasonable diligence they shouldn't be required to know that they were inadmissible, then they should be arguably admitted. And then we would request a remand to the lower courts to address the question of whether or not these Petitioners actually had knowledge that they're inadmissibility at the time that they were admitted. Thank you, counsel. Ms. Williams, I will get you straight before we're done. May it please the Court. I'm Lindsay Williams and I represent the Respondent in the matter. Today we respectfully request that the Court affirm the decision of the Board of Immigration Appeals for the following reasons. First of all, turning to the issue of whether or not — Could I have the microphone closer to you? Yes, sir. Thank you. Is that better? Okay. With respect to whether or not the government provided clear and convincing evidence of the Petitioners' removability, I'd like to point out a couple of factors that I think clarify the issue. Petitioners focus in on the fact that the government was unable to connect them to the Sustair scheme. And I think that looking at the evidence that was presented in the brief, if you look at the fact that Mrs. Kim, which is the mother in this case, had an interview with Leland Sustair and one of the co-conspirators in her home, and the fact that her visa or her fraudulent visa that Mr. Sustair created was based upon her being the spouse of a skilled worker when her husband was not a skilled worker, nor was he in the United States at any point. I think that those two factors right there link her to the Sustair scheme, in addition to all of the other evidence that was presented by the government and that's cited to in our brief. I'm going to go ahead and turn to the 212K issue, because I think that's probably where more of the interest is today. And if we have time, then I'll go back to the removability issue. It's the government's position that Petitioners were properly found ineligible for a waiver and admissibility under INA 212K. And as we've already discussed today, in this particular instance, the Petitioners, none of them had immigrant visas. Part of Sustair's scheme was simply that he would create all of the documents that needed to go into the adjustment application, and then he would give them a green card, which on its face looked valid, but none of the substance behind the green card was there. And most importantly for the 212K issue, none of these Petitioners ever received immigrant visas. So what they're saying, as I understand it, is that, well, certainly these individuals didn't know that they had a faulty green card. Let's just presume that. And so why does that make them any different than somebody who got bamboozled overseas and had a visa that they didn't know was a false or invalid visa? Because they're both arriving aliens, seeking to waive a ground of inadmissibility, and they claim they couldn't have discovered this before they showed up, or in this case re-showed up or re-entered. So why would it be fair or even rational to distinguish between those two categories? Well, Your Honor, first of all, the main difference is, is that someone who arrives at the border with an immigrant visa that has a technical defect, let's say whoever they've based their visa on has passed away before they arrive at the border, they have a visa. They've actually gone through the process and they've actually submitted the documents that they needed to submit. It's gone through the system. An immigrant visa actually exists. It may not be a technically valid immigrant visa, but it's an immigrant visa. Here, these Petitioners didn't have one at all. So what if the person had a false immigrant visa, but didn't have any reason to know that it was falsely issued? Would they stand in the same position as somebody who just had a little technicality of the lost relative or whatever? I'm sorry. You're saying? In other words, two people have visas. Right. They both have visas, but one of them is more akin to these LPRs, green card holders, because they got it unknowingly and it was fraudulent. But in that scenario, they still have an immigrant visa. I mean, I understand what Your Honor is saying, and I think it's more relevant to the second case that we're – that I'm arguing today than it is to this one. Okay. Because here, we're not even getting into whether it's fair or not. What we're getting into is the language of the statute, and the language of the statute requires that there be an immigrant visa. So you just say visa means visa. Visa means visa. Visa means visa. And Congress, if they wanted it to mean any other entry document, they could have put any other entry document. They've done it in other parts of the statute, and they didn't in this particular section. So our argument here is the very beginning step for getting a 212K waiver is to have that immigrant visa, which these Petitioners didn't have, because they weren't even in the system. So – and then with respect to the denial being a violation of equal protection, our first position is simply that they're not members of the group of aliens who just adjusted their status to lawful permanent residence. They're aliens who are in the United States illegally and without documents. So they don't even fall within that group that they claim to fall within. Secondly, that even if they were in possession of valid green cards, LPRs are not – lawful permanent residence are not similarly situated to people overseas who have immigrant visas. They are facially legitimate and bona fide reasons to treat aliens arriving at the border with immigrant visas who are applying for admission to the United States differently from lawful permanent residence who have already been admitted. And – and it's a rational distinction that this Court, looking at Inhabibi, has recently upheld. And so in closing, we believe that this case is airtight. We believe that DHS presented clear and convincing evidence of the Petitioners' removability, that they were involved in the SESTERE scheme, that they were linked to SESTERE, and therefore their documents were invalid, that they're ineligible for the 212K waiver because they lack the necessary immigrant visa to benefit from that provision, and that finally, the denial of 212K waiver doesn't constitute a violation of equal protection because Petitioners are not LPRs. And even if they were, it's a rational distinction that this Court has upheld in – in similar scenarios. And if the panel has no further questions. I don't believe that we do. All right. Thank you, Your Honors. Ms. Dyson, you may have a minute for rebuttal, if you'd like. I would just like to reemphasize the point that these Petitioners were not, in fact, by the charging documents, treated as LPRs. It's true. Therefore, they are similarly situated to – to inadmissible aliens predating themselves at the border with immigrant visas. This Court should look at the document – at the statute holistically, and – and – and should find that there was an equal protection violation and send the – and send the case back down to be considered about – for the knowledge issue to be considered, whether these – whether these Petitioners actually had knowledge of the scam that had been perpetrated by Sestare, if they are found removable. Thank you, Your Honors. The matter is submitted. Thank you. The case just argued is submitted. We appreciate very much the arguments of both counsel. They were very helpful.
judges: Wallace, Graber, McKeown